Cite as 2014 Ark. App. 698

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-14-448

| | |
|---|---|
| KENNETH COLEMAN COLLEY II<br>APPELLANT<br><br>V.<br><br>AUDREY HAMILTON COLLEY<br>APPELLEE | **Opinion Delivered** December 10, 2014<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, GREENWOOD DISTRICT<br>[NO. DR–2011–332–G (II)]<br><br>HONORABLE ANNIE POWELL HENDRICKS, JUDGE<br><br>REVERSED AND REMANDED |

## RITA W. GRUBER, Judge

Kenneth Coleman Colley II, a self-employed contractor, brings this child-support case before us for the second time. The primary issue is the procedure to be used for determining the amount of his income for purposes of child support. We dismissed the first appeal without prejudice because of a lack of finality in the circuit court's decree that granted Audrey Hamilton Colley's complaint for divorce. *Colley v. Colley*, 2014 Ark. App. 194. The circuit court subsequently entered a final order as to payment of child support, ordering Mr. Colley to pay $900 monthly for support of the parties' minor child. Mr. Colley now appeals the final order of child support, entered on April 23, 2014.

In his first three points, Mr. Colley contends that the circuit court erred as a matter of law in calculating child support under Administrative Order No. 10:

I. After the circuit court found that his income tax records were unreliable for

SLIP OPINION

determining child support, it erred as a matter of law by failing to follow appropriate procedure for determining his net worth and to consider factors required for determination of child support.

II.  The circuit court erred as a matter of law by failing to consider depreciation as it pertains to child support.

III.  The circuit court erred as a matter of law by failing to consider interest expense, a valid business deduction under the federal tax code, as a valid corporate deduction in its child-support analysis.

Mr. Colley also contends:

IV. The circuit court's finding that he clearly earns more than his reported income of $1,950 monthly—based on his travels and ability to purchase a boat, four-wheelers and vehicles, and lifestyle in general—was clearly erroneous.

V. The circuit court erred as a matter of law in refusing to make findings of fact and conclusions of law under Ark. R. Civ. P. 52(a).

We hold that the circuit court, in calculating child support under Administrative Order No. 10, erred as a matter of law by failing to follow the appropriate procedure for determining Mr. Colley's net worth and to consider the factors required for determining child support.  Because we remand to the circuit court on the first point, it is unnecessary to address the remaining points.

It is the task of the circuit court to determine a child-support payor's expendable income, which may be different from income for tax purposes.  *Cole v. Cole*, 89 Ark. App. 134, 201 S.W.3d 21 (2005).  Although due deference is given to a circuit court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony, no deference is given to that court's conclusion of law.  *Chitwood v. Chitwood*, 2014 Ark. 182, 433 S.W.3d 245.  The following directive for calculation of child support is

2

pertinent to the present case:

> *Nonsalaried Payors.* . . .
>
> For self-employed payors, support shall be calculated based on the last two years' federal and state income tax returns and the quarterly estimates for the current year. . . . Depreciation should be allowed as a deduction only to the extent that it reflects actual decrease in value of an asset. Also, *the court shall consider* the amount the payor is capable of earning or *a net worth approach based on property, life-style, etc.* For "clarification of the procedure for determining child support by using the net–worth method," see *Tucker v. Office of Child Support Enforcement*, 368 Ark. 481, 247 S.W.3d 485 (2007).

Ark. Sup. Ct. Admin. Order No. 10 § III(c) (2014) (emphasis added).

Our supreme court has outlined the procedure to be followed under the net-worth

method, which is to be utilized if the payor's tax returns are determined to be unreliable:

> Pursuant to Administrative Order No. 10, Section III(c), for self-employed payors, the circuit court should first consider the last two years' federal and state income tax returns and the quarterly estimates for the current year. A self-employed payor's income should include contributions made to retirement plans, alimony paid, and self-employed insurance paid.[1] *Id.* Depreciation should be allowed only to the extent that it reflects actual decrease in value of an asset. *Id.*
>
> If the circuit court determines that the tax returns are unreliable, then it shall make specific findings explaining the basis of its determination. The circuit court shall then proceed using the net-worth method. The circuit court shall establish a beginning net worth at the start of the relevant period and an ending net worth at the end of the period, considering living expenses and allowable deductions for the same period. *See Holland* [*v. United States*] 348 U.S. at 125, 75 S. Ct. 127. Additionally, the circuit court shall consider the following factors: (1) the impact of inflation or deflation on the payor's net worth; (2) liquidity of the payor's assets; (3) the payor's cash flow; (4) the payor's current and long-term financial obligations; (5) the payor's lifestyle; and (6) any other relevant factors. After determining the payor's disposable income, the circuit court shall calculate child support in accordance with the child-support guidelines.

---

[1]"A self-employed payor's income should include . . . self-employed *health* insurance paid[.]" Ark. Sup. Ct. Admin. Order No. 10 § III(c) (emphasis added).

SLIP OPINION

*Tucker*, 368 Ark. at 489–90, 247 S.W.3d at 492; s*ee also Wright v. Wright*, 2010 Ark. App. 250, at 6–7, 377 S.W.3d 369, 373–74 (stating that the circuit court, after making specific findings to support a determination that a self-employed payor's tax returns are unreliable, may determine the payor's income by using the net-worth method).

Testimony at the February 28, 2013 divorce hearing focused on Mr. Colley's income and expenses as a self-employed homebuilder; the parties' use of credit cards, which were in his name; and the parties' expenses from the time of their July 2008 marriage.[2] Mr. Colley asked that his child support be set at $400 a month based on his annual income according to recent tax returns: $15,589 on the 2011 return, and $22,524 on the 2010 return. Ms. Colley requested $1,081 monthly support based on Mr. Colley's monthly average of $750 in credit-card charges for personal items from November 2011 through October 2012; his use of the vehicle provided through his business; and his deposition testimony that it took $80,000 annually to satisfy bills and needs of the parties and their child, of which he paid 90% and she paid 10%.[3]

At the hearing's conclusion, the circuit court left the record open and ordered posttrial briefs on issues including child support as related to Administrative Order No. 10. Subsequently, the circuit court addressed child support in a letter opinion:

---

[2]Mr. Colley testified that he had made over $75,000 each year from 2007 through 2009 in his business, but the business had "pretty much gone in the dump" with the economy's downturn and he had depleted premarital funds of $258,000 to make ends meet. Documents and exhibits at the hearing included tax returns, affidavits of financial means, and each party's calculations for child support.

[3]Ms. Colley had income as a school teacher, and the parties had no joint accounts.

SLIP OPINION

> The Court finds that as set forth in *Williams v. Nesbitt*, 95 Ark. App. 79, 234 S.W.3d 343 (2006), it is a reversible error to mechanically look to tax documents to determine child support rather than the actual expendable income that a payor has available.
>
> Clearly, Mr. Colley's asserted net income of $1,950.00 is inconsistent with his monthly expenses as set forth by his Affidavit of Financial Means and his testimony that his net annual pay would be no less than $72,000.00 ($6,000.00 net monthly) to cover the financial needs of [the child], and himself. Therefore, the Court is setting support at the rate of $900.00 per month.

Mr. Colley filed a motion for reconsideration and motion for findings of facts under Ark. R. Civ. P. 52(a). He asserted that it was not possible to discern from the court's findings how it had arrived at the figure of $6,000 for net monthly income; that no substantial evidence supported a finding of $6,000 net earnings monthly for child-support purposes; and that, after correcting mistakes in his own financial affidavit and errors in Ms. Colley's addition, his monthly expenses would be $5,006. He also asserted that the circuit court mistakenly relied on *Williams v. Nesbitt, supra*, where the payor reduced his disposable income for child-support purposes by having excessive amounts withheld for federal income taxes, and failed to conduct the calculations for child support prescribed by Administrative Order No. 10 or to determine child support under the net-worth basis of *Tucker, supra*. In a second letter opinion, the court addressed Mr. Colley's motions:

> The Court once again, does not consider Mr. Colley's argument regarding his net income for purposes of child support to be credible. Mr. Colley testified both at trial and by way of deposition that his annual expenses were met by his annual net income of $72,000.00. The Court also considered the Defendant's standard of living and recreational expenses as allowed by Administrative Order Number 10. The Defendant clearly earns in excess of his reported income of $1,950.00 based upon his travels, his ability to purchase boats, four wheelers and vehicles and life style in general. Therefore, the Court declines to reconsider the issue of child support and the Defendant is ordered to pay the sum of $900.00 per month as previously ordered.

5

The circuit court entered its decree of divorce on June 12, 2013, incorporating its previous letter opinions and its ruling on Mr. Colley's motions for reconsideration and for findings of fact. Mr. Colley's income for purposes of child support was calculated in Paragraph IX of the decree:

> That the Court specifically finds that as set forth in *Williams v. Nesbitt*, 95 Ark. App, 79, 234 S.W. 3d 343 (2006), it is a reversible error to mechanically look to tax documents to determine child support rather than the actual expendable income that a payor has available. That, clearly, Mr. Colley's asserted income of $1,950.00 is inconsistent with his monthly expenses as set forth by his Affidavit of Financial Means and his testimony that his net annual pay would be no less than $72,000.00 ($6,000.00 net monthly) to cover the financial needs of [the child] and himself. That the defendant clearly earns in excess of his reported income of $1,950.00 based upon his travels, his ability to purchase boats, 4-wheelers and vehicles and lifestyle in general. That, therefore, the Court is setting child support at a rate of $900.00 per month, effective as of the date of this Order[.]

The circuit court's final order as to payment of child support, after our dismissal of the first appeal for want of a final order, again set child support at $900 on the basis of Paragraph IX.

On appeal, Mr. Colley argues that there is no evidence to support the trial court's finding that his monthly net income was $6,000 and no credible evidence that his recent tax returns were unreliable. He complains that the trial court, without considering his depletion of premarital money, incorrectly based child support on his testimony about the amount he paid for current personal and corporate expenses, in which he mistakenly combined his corporate and personal expenses. He points to his testimony that he borrowed $30,000 from his father during the marriage and had $100,000 in loans from his grandmother, one of which was still outstanding at the time of the divorce; that he and Ms. Colley purchased three vehicles through his corporation, trading in vehicles on two of them and making loan

payments; and that he used only $400 of marital funds when he traded in an ATV owned before the marriage on a different ATV. He complains that the circuit court did not explain how his excess spending after the parties separated, on such things as trips with his girlfriend and the purchase of a $38,000 boat, rendered his 2010 and 2011 tax returns unreliable. Finally, he asserts that the circuit court erred in relying on *Williams v. Nesbitt* and in failing to apply the analysis of *Tucker v. Office of Child Support Enforcement*.

We agree with Mr. Colley's final argument. Administrative Order No. 10, which allows a circuit court calculating a self-employed payor's income to consider "a net-worth approach based on property, life-style, etc.", cites *Tucker* for clarification of "the procedure for determining child support by using the net-worth method." *Tucker*, in turn, requires the circuit court to determine beginning and ending net worth for the relevant period, and then to consider (1) the impact of inflation or deflation on the payor's net worth; (2) the liquidity of the payor's assets; (3) the payor's cash flow; (4) the payor's current and long-term financial debts or obligations; (5) the payor's lifestyle; and (6) any other relevant factors. 368 Ark. at 490, 247 S.W.3d at 492. The circuit court did not completely perform the required analysis, and we remand for it do so.

Reversed and remanded.

WYNNE and BROWN, JJ., agree.

*Ronald W. Metcalf, P.A.*, by: *Ronald W. Metcalf*, for appellant.

*Gean, Gean & Gean*, by: *Roy Gean III*, for appellee.